J-S31032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: C.M.M., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: D.A.M., JR., FATHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 756 EDA 2021 |

Appeal from the Decree Entered March 5, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2020-A0174

| | |
|---|---|
| IN RE: T.D.M. A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: D.A.M., JR., FATHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 758 EDA 2021 |

Appeal from the Decree Entered March 5, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2020-A0175

| | |
|---|---|
| IN RE: J.R.M. A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: D.A.M., JR., FATHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 759 EDA 2021 |

Appeal from the Decree Entered March 5, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2020-A0176

| | |
|---|---|
| IN RE: D.C.M., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |

```
                                          :
    APPEAL OF: D.A.M., JR., FATHER         :
                                          :
                                          :
                                          :
                                          :
                                          :
                                          :
                                          :    No. 761 EDA 2021
```

Appeal from the Decree Entered March 5, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2020-A0177

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                **FILED NOVEMBER 9, 2021**

These consolidated appeals concern decrees of involuntary termination of parental rights entered by the Court of Common Pleas of Montgomery County Orphans' Court (trial court) as to the minor children, C.M.M., T.D.M., J.R.M. and D.C.M.  The father of the children, D.A.M. (Father), contends that the decrees must be overturned because there was insufficient evidence to support them.  However, Father's appellate counsel has applied to withdraw pursuant to *Anders v. California*, 368 U.S. 738 (1967), asserting that the appeal is frivolous.  Upon our review of the record and the briefs, counsel's application to withdraw is granted and the decrees terminating Father's parental rights to the above-named children are affirmed.

---

* Retired Senior Judge assigned to the Superior Court.

**I.**

On February 28, 2017, the Montgomery County Office of Children and Youth (OCY) received a report that Father was failing to provide adequate housing for his only child at the time, T.D.M.[1]  Father's residence lacked electricity, heating and hot running water.  The home was also extremely messy and had a broken door and windows.  Father was suspected of producing methamphetamines and T.D.M. was suffering from respiratory issues that required hospitalization.

OCY intervened and instituted a plan on May 16, 2017, with the goal of providing a stable and safe home environment for T.D.M.  The home was soon repaired and T.D.M. was returned to Father's custody.  C.M.M. was born on November 7, 2018, but soon after OCY again received reports of inadequate housing similar to those it had received the previous year.

In February 2019, OCY provided Father with $600 to pay an overdue electric bill, but the home still had no electricity as of April 2019.  That month, T.D.M.'s respiratory issues recurred, again requiring hospitalization.  In May 2019, OCY received reports that Father was using controlled substances and he refused to submit to a drug screen.

The situation escalated later that same month when police responded to a domestic dispute at the home between Father and the children's mother.

---

[1] The children's mother is not a party to this appeal.

Father was charged with assault and harassment. An OCY caseworker checked on the family in person on May 13, 2019, and the children's mother refused to let her inside the home.

On May 14, 2019, T.D.M. and C.M.M. were placed with foster parents. Father was informed of the circumstances that necessitated the placement order, and family service plans were developed with the goal of reunifying the children with their parents. Due to Father's lack of progress in addressing the poor living conditions for the children, they were adjudicated dependent on June 11, 2019, so that they could remain in foster care.

The children's mother gave birth to twins (J.R.M. and D.C.M.) on October 16, 2019. The conditions in Father's residence were still inadequate so the twins resided with their grandmother. By January 2020, the twins could no longer reside in their grandmother's residence so they were placed in a separate foster home than the one provided to their siblings, T.D.M. and C.M.M.

For the first two months of the twin's placement in a foster home, Father attended only one of eight scheduled visits with them. Then, once the outbreak of COVID-19 required all visits to be remote between March and October 2020, Father had no contact with the children. OCY was unable to get in touch with him during that time.

The trial court held several permanency review hearings on June 2, 2020; June 25, 2020; September 8, 2020; and December 7, 2020, and it was

determined each time that Father had made no progress in improving the conditions which resulted in the children's adjudications of dependency. In fact, on October 13, 2020, the children's mother informed the court that she and Father were residing in a motel room.

On December 4, 2020, OCY filed a petition to involuntarily terminate Father's parental rights as to all four children. OCY asserted that termination was proper under Sections 2511(a)(1), 2511(a)(2), 2511(a)(5) and 2511(a)(8) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.

On March 3, 2021, the trial court held a hearing on OCY's petition for involuntary termination of Father's parental rights. At the conclusion of the hearing, the trial court entered decrees terminating Father's parental rights as to the four children. Father timely appealed and in his brief, he argues that the record did not support involuntary termination of his parental rights under any of the statutory grounds relied upon by the trial court. However, Father's appellate counsel has also filed an application to withdraw from the case, explaining that in counsel's view, the issues raised on appeal are entirely frivolous.

**II.**

Father's appellate counsel has filed an application to withdraw from the case pursuant to **Anders v. California**, 386 U.S. 738 (1967), which affords a party the right to counsel in appeals concerning orders of involuntary parental termination. **See In re X.J.**, 105 A.3d 1 (Pa. Super. 2014)

(recognizing that **Anders** has been extended from criminal cases to parental termination proceedings). Because Father's appellate counsel filed an application to withdraw and an **Anders** brief stating that all the appellate grounds contained therein are frivolous, "this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010).

Before appellate counsel may withdraw from an appeal pursuant to **Anders**, certain requirements must be met. In the **Anders** brief, counsel must:

> (1) Provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

"Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief."

*Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa. Super. 2014) (quoting

*Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005)).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *In re X.J.*, 105 A.3d at 4. This Court's independent review must also "discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). *Flowers* does not require us "to act as counsel or otherwise advocate on behalf of a party." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Id.*

In this case, counsel has substantially complied with the technical requirements to withdraw. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the *Anders* requirements is sufficient). He has reviewed the record, apprised Father of each step of the appellate process, determined that the appeal would be frivolous, furnished Father with a copy of the brief and application to withdraw, advised him of his right to retain new counsel, proceed *pro se*, or raise any additional points that he deems worthy of the court's attention, and filed an

application to this Court for leave to withdraw. Having found Father's appellate counsel in compliance with ***Anders***, we now consider the merits of the issues raised on appeal and whether the appeal is wholly frivolous.

## III.

## A.

Father's appellate claims as to all four of the children concern whether there is clear and convincing evidence in the record which supports the trial court's decrees of involuntary termination of parental rights.[2] Termination of parental rights under the Adoption Act requires a bifurcated analysis of the grounds for termination (enumerated in Section 2511(a)), and the needs and welfare of the child (defined in Section 2511(b)). ***See In re B.J.Z.***, 207 A.3d 914, 921 (Pa. Super. 2019). When reviewing a trial court's decree terminating parental rights, we need only agree as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm the decree. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

---

[2] When reviewing an order granting or denying termination of parental rights, the appellate court must accept factual findings and credibility determinations supported by the record and assess whether the trial court abused its discretion or committed an error of law. ***See In re D.C.D.***, 629 Pa. 325, 339-40 (Pa. 2014). "A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 616 Pa. 309, 325 (Pa. 2012). The grounds for termination enumerated in 23 Pa.C.S. § 2511(a) must be supported by clear and convincing evidence, which is defined as "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts at issue." ***In re Z.P.***, 994 A.2d 1108, 1116 (Pa. Super. 2010).

The decrees in this case were each predicated on four independent provisions of the Adoption Act, which provides in relevant part as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

First, the focus of subsection (a)(1) is on whether the parent has fulfilled his duties to the child, *see In re C.S.*, 761 A.2d 1197 (Pa. Super. 2000), and the court must evaluate the parent's performance within the six-month period preceding the filing of the petition to terminate parental rights. *See In Re: J.L.C.*, 837 A.2d 1247, 1252 (Pa. Super. 2003). A parent's performance of this duty may not "be met by a merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). Rather, the parent must act with good faith interest and effort, utilizing all available resources to preserve the parent-child relationship. *See id.*

Here, there was clear and convincing evidence in the record that Father failed to perform his parental duties to the children for a period of over six months preceding OCY's petition to involuntarily terminate his parental rights. The petition was filed on December 4, 2020, and between March 12, 2020, and October 28, 2020, Father had minimal contact with the children. He once visited virtually with T.D.M. and C.M.M. on October 28, 2020, and once with J.R.M. and D.C.M. on November 2, 2020. He made no attempts to contact

them and did not do so until he appeared at the hearing on the termination petition, which was held on March 3, 2021.

In addition to the lack of contact between Father and the children, the record is devoid of any evidence that Father provided any emotional or financial support at the relevant times. Nor did Father avail himself of resources provided to him by OCY to improve the prospect of reunification. Thus, Father's inability to assume a parental role fell far short of the standard needed to carry out his parental duties, and the trial court did not err in concluding that involuntary termination of parental rights was warranted pursuant to Section 2511(a)(1).

**B.**

We next consider whether the record supports termination of Father's parental rights under subsection 2511(a)(2). The primary factor under this subsection is the incapacity or neglect of the parent and the effect of that incapacity or neglect on the child. *See In re: Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996). Termination is proper under this subsection if it is shown by clear and convincing evidence that the parent cannot provide basic needs and a structured environment for the child and the parent's neglect or incapacity cannot or will not be remedied. *See generally In re S.P.*, 47 A.3d 817 (Pa. 2012).

In the present case, the trial court considered the present and future needs of the children, concluding that Father lacked the capacity and desire

- 11 -

to adequately care for them. As discussed above, Father has exhibited a continued incapacity and unwillingness to care for the children throughout their respective periods of foster placement. The living conditions provided to the children by Father have led to hospitalizations of a child on more than one occasion. Further, Father has made no progress on his family service plan for reunification and he has not demonstrated an ability to provide for the children's emotional and physical needs. For example, he has refused to comply with drug screening or drug treatment and the family's inadequate home conditions persist. Thus, the trial court did not err in determining that the evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(2).

## C.

Our analysis of subsections 2511(a)(5) and 2511(a)(8) involves several overlapping considerations, so they will be addressed together. To terminate parental rights under Section 2511(a)(5), the trial court must find there to be clear and convincing evidence that: (1) the children have been removed from parental care for at least six months before the filing of the petition to terminate parental rights; (2) the conditions that led to the removal continue to exist; (3) the parent is unable or unwilling to remedy those conditions within a reasonable period of time; (4) the services or assistance reasonably available to the parent are not likely to remedy the conditions that led to the removal within a reasonable period of time; and (5) termination of parental

rights will best serve the needs and welfare of the child. ***See*** 23 Pa.C.S. § 2511(a)(5).

Similarly, under Section 2511(a)(8), there must be clear and convincing evidence that: "(1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275–76 (Pa. Super. 2003).

Other than the respective six-month and 12-month time frames, the primary difference between the two subsections is that parental termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused foster placement. ***See In re Z.P.***, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citing ***In re Adoption of T.B.B.***, 835 A.2d 387, 396 (Pa. Super. 2003)).

In this case, there is clear and convincing evidence supporting parental termination, both under Sections 2511(a)(5) and 2511(a)(8). T.D.M. and C.M.M. were placed in foster care on May 14, 2019, and OCY filed petitions for termination of parental rights on December 4, 2020, over 18 months after their placement. J.R.M. and D.C.M. were placed in foster care on January 8, 2020, and OCY filed petitions for termination of parental rights on December 4, 2020.

Crucially, the children were initially placed into foster care due to the alleged substance abuse of their parents, lack of supervision and an unstable home environment. The record shows that Father has not made progress on alleviating the conditions which led to that placement. He has not engaged in drug treatment, established a suitable home for the children or demonstrated financial stability.

Section 2511(a)(5) further requires a showing that the services or assistance reasonably available to the parent are not likely to remedy the conditions that led to the removal within a reasonable period of time. Here, the record supports OCY's claim that Father has failed to take advantage of services and assistance offered to him from government agencies since the oldest children were removed in May 2019. Father has also not demonstrated a willingness to avail himself of such services or assistance in the future. Thus, the trial court did not err in entering the decrees of involuntary termination pursuant to subsections 2511(a)(5) or 2511(a)(8).

**D.**

Finally, for the purposes of Section 2511(b), the record supports the trial court's conclusion that the termination of Father's parental rights would serve the best interests of the children and not be detrimental to their welfare. When considering the needs and welfare of the child under this section, the trial court must assess the emotional bond between parent and child. *See* ***C.M.K.***, 203 A.3d 258, 262 (Pa. Super. 2019). The trial court must also

strongly consider whether severing the bond permanently would have a negative effect on the child. *See Id.*; *see also In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (same).

At the termination hearing in this case, the testimony of the foster parents and the OCY caseworkers established that the children are residing in loving foster homes. The developmental, physical and emotional needs of the children are all being met by their foster parents. The record does not evidence any emotional bond between Father and the children, much less the possibility that a termination of Father's parental rights would detrimentally affect them.

For all of the above reasons, the trial court did not err in determining that the children's best interests would be served by terminating Father's parental rights so that the children may continue residing in their respective foster homes. Having conducted our own review of the proceedings, we conclude that Father's appeal is wholly frivolous and that Father's appellate counsel has not overlooked any additional, non-frivolous issues.

Application to withdraw as counsel granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/09/2021

- 15 -